**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **United States of America,** | **Criminal No. 07-438 (JRT/JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Kory Steven Loveland,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned on April 22, 2008 for the pretrial motions of defendant Kory Loveland. Richard A. Newberry, Jr., Assistant United States Attorney, appeared on behalf of the Government. Caroline Durham, Assistant Federal Defender, appeared on behalf of Mr. Loveland (Loveland).

By a motion to suppress evidence from a search and seizure (Doc. No. 12), Loveland challenges whether officers had reasonable, articulable suspicion to conduct an investigatory stop of his vehicle, as well as whether officers had probable cause to execute search warrants of that vehicle and his person. And through a motion to suppress statements (Doc. No. 13), Loveland contends that officers took his statement in violation of his privilege against self-incrimination. These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

**I.     BACKGROUND**

This matter arises out of a traffic stop on the morning of July 18, 2007, when Sergeant Wayne Johnson, of the Washington County Sheriff's Office, stopped a Jeep Liberty for speeding.

Johnson obtained a license from the driver and ran a records check. According to the license, Loveland was the driver. The records check revealed that the state of Idaho had issued an arrest warrant against Loveland, for violating parole on a felony conviction.

Returning to the Jeep, Johnson asked Loveland to exit the vehicle, but Loveland refused. He instead drove away from the stop. A high-speed chase ensued, which ended when Loveland crashed. As officers were taking Loveland into custody, Johnson observed a firearm on the floor in front of the passenger seat. The Jeep was subsequently impounded.

Johnson reported these events and the firearm to Detective Gregory Reiter, also of the Washington County Sheriff's Office. Reiter recited the information in an affidavit and obtained a warrant to search the Jeep. The warrant was executed later that day and officers recovered the firearm from the Jeep.

Based on the previous affidavit and the ensuing search, Reiter obtained another search warrant the next day. This time the warrant sought a DNA swab of Loveland, so his DNA could be compared with that on the firearm. The warrant was executed without incident.

Reiter spoke to Loveland later that day. The encounter, captured in its entirety on a video recording, occurred at an interrogation room in the jail where Loveland was detained. Reiter gave Loveland a *Miranda* warning. When Reiter asked Loveland if he wanted to talk, Loveland unequivocally responded "no." Loveland then initiated the following discussion.

> L: Can I get at least my girlfriend's stuff to her?
>
> R: Okay. All right. Well, I'll get a hold of her today and we'll get the truck back to her. I'm gonna give you a copy of the search warrant here.
>
> L: Heard you talking about a bomb yesterday. All crazy.
>
> R: I don't know. The warrant was for explosives I guess or something so they were concerned.

   L:  What gave them the idea I had a bomb?

   R:  I don't know.

   L:  They tear the vehicle apart?

   R:  What's that?

   L:  They tear the vehicle apart?

   R:  Well, they were going to do that anyways.  So, and then, we got a search warrant for the gun in there.

The discussion ended shortly afterwards, and Loveland made no other potentially incriminating comments.

## II. ANALYSIS

### A. Search Warrants

#### 1. Fruit of the Poisonous Tree

In his motion papers, Loveland asserted that the search warrants were not supported by probable cause.  At the motion hearing, however, Loveland sought to challenge the basis for the original traffic stop.  He argued that, if the traffic stop was illegal, then this illegality tainted the search warrants as well.

At the outset, this Court observes that Loveland did not give the Government meaningful notice that he would be challenging the stop.  Even if there was sufficient notice, however, the legality of the stop need not be decided.  Assuming for the sake of argument that the stop was illegal, the appropriate question, instead, is whether the ensuing search warrants are the "fruit of the poisonous tree."

The rule here is that, when there is a causal connection between officers' illegal conduct and the fruits of that conduct, such evidence ordinarily should be suppressed.  *United States v.*

*Simpson*, 439 F.3d 490, 493-94 (8th Cir. 2006). But under the "independent source" doctrine, if an intervening event establishes another lawful reason to obtain the evidence, then the prior taint of illegal misconduct is purged and the evidence becomes admissible. *United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005).

Where a person is unlawfully stopped or arrested, but that person commits other conduct that supplies probable cause to arrest that person for another offense, that intervening event will purge the unlawful stop and subsequent evidence is admissible. *United States v. Dawdy*, 46 F.3d 1427, 1430-31 (8th Cir. 1995). So if a person flees from an unlawful stop, the crime of fleeing from the officer supplies probable cause to arrest that person, who forfeits the right to challenge the prior unlawful stop. *United States v. Sledge*, 460 F.3d 963, 966-67 (8th Cir. 2006).

That rule is equally applicable here. Even if Loveland was wrongfully detained, his flight and the ensuing high-speed chase was a new and unrelated crime, which gave officers probable cause to arrest him. These events provided officers an independent source for the subsequent search warrants. So even if the initial traffic stop was illegal, the warrants are not the fruit of the poisonous tree and they need not be suppressed.

### 2. Probable Cause

Loveland separately mounts a facial challenge to the search warrants, arguing they are not supported by probable cause. The Fourth Amendment requires that, for a search warrant to be authorized, a detached and neutral magistrate must find that it is supported by probable cause. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).

A search warrant is supported by probable cause when reasonable persons, considering the facts and circumstances alleged in the search warrant affidavit, would find a fair probability that incriminating evidence is on the person or premises to be searched. *Illinois v. Gates*, 462

U.S. 213, 238 (1983). When reviewing the sufficiency of the affidavit, a court only considers the information in the affidavit. *United States v. Stevens*, 439 F.3d 983, 987-88 (8th Cir. 2006).

Where officers have reason to believe a person is a felon, and the officers have previously observed a firearm among the felon's possessions, there is a fair probability the felon possesses the firearm illegally. Such information will supply probable cause to search the premises where the firearm was observed. *See United States v. Beck*, 122 F.3d 676, 679 (8th Cir. 1997).

Because law enforcement here had reason to believe that Loveland was a convicted felon, and because they saw a firearm in plain view inside his vehicle, this Court concludes that there was probable cause to issue a search warrant for the vehicle. By extension, because officers had reason to believe that Loveland possessed the firearm, they likewise acquired probable cause to obtain DNA from him. Because the warrants are amply supported by probable cause, evidence obtained from the warrants need not be suppressed.[1]

  **B.**  **Statements**

Loveland also moves to suppress statements. At the motion hearing, Loveland indicated he was focusing on the search warrants. And in his motion papers, he does not discuss the basis for his motion to suppress statements. But in an abundance of caution, this Court will address that motion as well.

Through this motion, Loveland asserts the privilege against self-incrimination. This constitutional privilege, which arises under the Fifth Amendment, requires that a person in police

---

[1] During cross-examination of Reiter at the motion hearing, Loveland introduced a photograph of the interior of the Jeep. Describing the photograph, counsel claimed the firearm was concealed, and so it was not in plain view. Reiter did not concur with this description, and Loveland did not offer the photograph into evidence. Loveland implies, nevertheless, that the allegations in the search warrant affidavit are false. Because Loveland has not expressly challenged those allegations, or offered meaningful proof to support such a challenge, this issue does not alter the outcome here.

custody must receive a *Miranda* warning before being subject to interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). Once the person receives a *Miranda* warning, if that person unequivocally invokes the right to remain silent, interrogation must cease. *United States v. Astello*, 241 F.3d 965, 970 (8th Cir. 2001).

The parties have not contested that Loveland was in custody; that he received a *Miranda* warning; and that Loveland invoked his *Miranda* rights. The relevant issue, therefore, is whether interrogation ceased.

To determine whether officers' conduct amounts to interrogation, the standard is whether an officer engaged in express questioning or its functional equivalent. This standard incorporates officers' words or actions, other than those normally incident to custody, which they know are likely to result in an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). But where a suspect makes spontaneous statements to an officer, or asks the officer questions, no interrogation can be imputed to the officer. *See United States v. Tail*, 459 F.3d 854, 857 (8th Cir. 2006); *United States v. Lockett*, 393 F.3d 834, 837-38 (8th Cir. 2005).

The record shows that Loveland, on his own initiative, started asking Reiter questions. Reiter offered perfunctory responses, and he did not answer in a manner that was likely to elicit an incriminating response. As a result, Loveland was not interrogated. His statements were not taken in violation of his privilege against self-incrimination, and they need not be suppressed.

## III.   CONCLUSION

Assuming that the stop for speeding was unlawful, Loveland's flight provided officers another lawful reason to arrest him. So when officers later obtained warrants for his vehicle and his person, the warrants came from an independent source, which means the warrants need not be suppressed as fruit of the poisonous tree. As the search warrant affidavits otherwise supply

probable cause to search his vehicle and his person, this Court concludes that evidence from the searches is admissible, and that Loveland's motion to suppress is properly denied.

To the extent Loveland moves to suppress his statements, the statements were not made in response to interrogation.  His motion to suppress statements is appropriately denied as well.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Loveland's motion to suppress evidence from a search and seizure (Doc. No. 12) be **DENIED.**

2. Loveland's motion to suppress statements (Doc. No. 13) be **DENIED.**

Dated this 15th day of May, 2008.                    /s    *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **May 27, 2008.**  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.